TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00299-CV







Texas Medical Liability Trust; The Medical Protective Company; American


Physicians Insurance Exchange; Texas Medical Liability Insurance 


Underwriting Association; Insurance Corporation of America;


Dr. Stephen Lesauvage; and Dr. Ted Huang, Appellants




v.




Zurich Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 95-00962, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING








 Appellants, certain physicians and their insurance carriers (hereafter "physician-insurers"), (1)
claim that they are additional insureds under the vendor's endorsements of six insurance contracts issued
to Dow Corning Company by Zurich Insurance Company. They contend that Zurich owes them a duty
to defend under the contracts. We disagree and will affirm the trial court's summary judgment.


BACKGROUND

 Dow Corning Company is a manufacturer of silicone breast implants. From 1989 to 1994
it entered into six insurance contracts with appellee, Zurich Insurance Company. Zurich had a duty to
defend insureds under those contracts against any suit seeking damages for bodily injuries caused by Dow's
products. (2) Dow is the named insured in each of the contracts; however, several endorsements to each
contract name various groups of individuals as additional insureds. 

 One of these endorsements, entitled a "vendor's endorsement," is the focus of this appeal. 
Each contract contains a vendor's endorsement, which states:


ADDITIONAL INSURED - VENDORS


WHO IS AN INSURED (Section II) is amended to include as an insured any person or
organization (referred to below as vendor) shown in the Schedule, but only with respect
to "bodily injury" or "property damage" arising out of "your products" shown in the
Schedule which are distributed or sold in the regular course of the vendor's business . . .
.



Although the language of the vendor's endorsements is identical in each of the six contracts, the schedules
referred to in the vendor's endorsements are not.

 In 1991, women began suing Dow Corning alleging that the breast implants it manufactured
were unreasonably dangerous and defective. Frequently included in these lawsuits were the physicians who
performed the breast implant surgery. A typical petition in these cases alleged that Dow Corning sold and
delivered breast implants to the defendant-physician and that "DEFENDANT PHYSICIAN and/or
DEFENDANT HOSPITAL expected the BREAST IMPLANTS sold by it to reach consumers or users
in the condition in which it sold them." (Emphasis added.)

 Because the typical complaint alleged that the physicians sold breast implants to the
plaintiffs, the physician-insurers contended that the physicians were "vendors" of breast implants as defined
by the vendor's endorsements in Dow's insurance contracts. Consequently, the physician-insurers argued
that Zurich had a duty to defend the physicians in the breast implant lawsuits. Zurich brought suit against
the physician-insurers seeking a declaratory judgment that the physicians were not vendors and therefore
Zurich owed them no duty to defend.

 Both Zurich and the physician-insurers filed motions for summary judgment. The trial court
granted Zurich's motions, declaring as a matter of law Zurich had 


no obligations under its 1989, 1990, 1991, 1992, 1993, and 1994 insurance contracts
with Dow Corning Corporation to physicians . . . who are sued as a result of breast
implant surgery; that such physicians are not "additional insureds--vendors" within the
meaning of these contracts; and that [Zurich] has no obligation under those contracts to
reimburse the Defendants for attorneys' fees, costs or expenses they have incurred or will
incur on behalf of such physicians.



The physician-insurers bring this appeal.


DISCUSSION


 We review the trial court's summary judgment de novo. In performing our review we must
determine whether Zurich met its burden of showing that no genuine issue of material fact exists and that
it is entitled to judgment as a matter of law. We will accept as true all evidence favorable to the physician-insurers and indulge every reasonable inference and resolve every doubt in their favor. See Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 The physician-insurers argue Zurich has a duty to defend the physicians based on the
wording of both the vendor's endorsements and the petitions in the underlying lawsuits against the
physicians. (3) The physician-insurers contend that the vendor's endorsements make all sellers of breast
implants additional insureds under Dow Corning's insurance contracts. Accordingly, they claim that the
physicians are additional insureds under these contracts because the petitions in the underlying lawsuits
allege that the physicians are liable as sellers of breast implants. We disagree with this interpretation.

 To determine whether Zurich has a duty to defend the physicians, we consider only the
facts alleged in the pleadings of the underlying lawsuits and the language of the insurance contracts. 
National Union Fire Ins. Co. v. Merchants Fast Motor Lines, 939 S.W.2d 139, 141 (Tex. 1997);
Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 24-25 (Tex. 1965). We
consider the factual allegations without reference to their veracity, to what the parties know or believe the
facts to be, or to any legal determination of the facts. (4) Heyden Newport Chem. Corp., 387 S.W.2d at
24. Because courts are confined to the four corners of the underlying complaint and the four corners of
the insurance contract in determining whether a duty to defend exists, this rule is commonly referred to as
the "eight corners" rule. (5) In applying the eight corners rule we interpret the allegations in the petition
liberally, resolving any doubt in favor of the insured; however, if the underlying petition does not allege facts
within the scope of coverage the insurer has no duty to defend. See National Union Fire Ins. Co., 939
S.W.2d at 141.

 As noted above, each of the six vendor's endorsements is identical, but the schedules
referenced in the endorsements are not. Because each vendor's endorsement includes as an insured "any
person or organization . . . shown in the Schedule," the language of each schedule determines the extent
of our review under the eight corners rule. (Emphasis added.) 

 In both 1993 and 1994, the schedule referenced in the vendor's endorsement stated,
"Name of Person or Organization (Vendor): AS PER SCHEDULE ON FILE WITH COMPANY." The
schedule on file with Dow Corning is included in the summary-judgment record. It is undisputed that none
of the physicians named as defendants in the underlying lawsuits are included in this schedule. Accordingly,
as a matter of law, these physicians cannot be vendors under the 1993 and 1994 insurance contracts.


 The 1989, 1990, 1991, and 1992 schedules, however, do not restrict which persons or
organizations qualify as vendors. (6) Accordingly, we must consider the allegations in the underlying pleadings
in light of the language of the vendor's endorsements to determine if Zurich had a duty to defend the
physicians under the 1989, 1990, 1991, and 1992 insurance contracts. See Heyden Newport Chem.
Corp., 387 S.W.2d at 24. The relevant portions of these vendor's endorsements include as an additional
insured "any person . . . (referred to below as vendor) . . . , but only with respect to 'bodily injury' . . .
arising out of '[Dow Corning's] products' . . . which are sold in the regular course of the vendor's
business . . . ." (Emphasis added.) Thus, to be an additional insured under the plain language of the
vendor's endorsement, the physicians must not only have sold the breast implants, but also the sale of the
breast implants must constitute the regular course of the physicians' business. The undisputed summary
judgment proof establishes that the physicians in this case were selling professional services--specifically,
surgical procedures. The breast implant appliances, which lie at the heart of the insuring agreements, were
at most incidental and collateral to the professional services being rendered by the physicians. While the
petitions in the underlying lawsuits allege a sale by the physicians, it is significant that the petition is silent as
to whether those sales constituted the regular course of the physicians' business. 

 The dictionary defines the term vendor as "one that offers goods for sale esp[ecially]
habitually or as a means of livelihood." Webster's Third New International Dictionary 2539-40
(Phillip B. Gove ed., 1986) (emphasis added). To be an additional insured under the vendor's
endorsements, the physicians must, in the regular course of their business, be vendors of Dow Corning
breast implants. The undisputed summary-judgment proof establishes that these physicians do not sell
breast implants as a means of livelihood; rather, they earn a living by providing professional medical
services. 

 The Texas Supreme Court has distinguished the sale of goods from the sale of professional
medical services. See Barbee v. Rogers, 425 S.W.2d 342, 345-46 (Tex. 1968). Barbee involved a
licensed optometrist who fitted a patient for contact lenses. Although the optometrist did sell the lenses,
the sale of professional services was the regular course of the optometrist's business. See id.; see also
Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995) (citing Barbee).

 Here, the undisputed record establishes that the physicians are in the regular course of
providing medical services--namely, cosmetic surgery. Any sale of breast implant appliances was merely
incidental to the rendition of these services. Because selling breast implants was not the physicians' regular
course of business and because the underlying petitions did not allege that the physicians' regular course
of business was the sale of breast implants, the physicians are not "vendors" of breast implants as that term
is used in the vendor's endorsements. Accordingly, we hold as a matter of law the physicians are not
additional insureds under the 1989, 1990, 1991, and 1992 vendor's endorsements.



CONCLUSION



 Having determined that the physicians in the underlying lawsuits do not qualify as additional
insureds under any of Dow Corning's insurance policies, we affirm the trial court's summary judgment.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: April 3, 1997

Publish
1. The insurance carriers for several breast implant physicians (the physician-insurers) brought this
lawsuit. Dr. Stephen Lesauvage and Dr. Ted Huang intervened seeking relief from damages caused by
Zurich's refusal to defend them. For clarity, we will include Drs. Lesauvage and Huang in the description
"physician-insurers."
2. Zurich also had a duty to indemnify those insured under the contracts for any amount the insured
became obligated to pay as damages from such bodily injury; however, the duty to indemnify is not at issue
in this case.
3. In the instant case, the physician-insurers are not arguing that Zurich has a duty to indemnify the
physicians. "[T]he duty to defend and duty to indemnify are distinct and separate duties creating distinct
and separate causes of action." American Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 153
(Tex. App.--Dallas 1990, writ dism'd); see also Heyden Newport Chem. Corp. v. Southern Gen. Ins.
Co., 387 S.W.2d 22, 24-25 (Tex. 1965). 
4. "In contrast, the duty to indemnify is based, not upon the pleadings, but upon the actual facts which
underlie and result in the liability." American Alliance Ins. Co., 788 S.W.2d at 154.
5. Zurich contends that the eight corners rule does not apply. It argues that we may look only to the
language of the insurance contracts to determine whether the physicians are additional insureds. We reject
this contention because the Texas Supreme Court has applied the eight corners rule to determine whether
a party is an additional insured for the purposes of an insurer's duty to defend. See Heyden Newport
Chem Corp., 387 S.W.2d at 23-25.
6. The 1989 and 1990 schedules define vendors as "ALL VENDORS (INCLUDING
INDEPENDENT CONTRACTORS APPOINTED AS 'CUSTOMER SERVICE AND
DISTRIBUTOR REPRESENTATIVES' UNDER CONTRACT TO THE NAMED INSURED.)." The
1991 and 1992 schedules are blank.



collateral to the professional services being rendered by the physicians. While the
petitions in the underlying lawsuits allege a sale by the physicians, it is significant that the petition is silent as
to whether those sales constituted the regular course of the physicians' business. 

 The dictionary defines the term vendor as "one that offers goods for sale esp[ecially]
habitually or as a means of livelihood." Webster's Third New International Dictionary 2539-40
(Phillip B. Gove ed., 1986) (emphasis added). To be an additional insured under the vendor's
endorsements, the physicians must, in the regular course of their business, be vendors of Dow Corning
breast implants. The undisputed summary-judgment proof establishes that these physicians do not sell
breast implants as a means of livelihood; rather, they earn a living by providing professional medical
services. 

 The Texas Supreme Court has distinguished the sale of goods from the sale of professional
medical services. See Barbee v. Rogers, 425 S.W.2d 342, 345-46 (Tex. 1968). Barbee involved a
licensed optometrist who fitted a patient for contact lenses. Although the optometrist did sell the lenses,
the sale of professional services was the regular course of the optometrist's business. See id.; see also
Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995) (citing Barbee).

 Here, the undisputed record establishes that the physicians are in the regular course of
providing medical services--namely, cosmetic surgery. Any sale of breast implant appliances was merely
incidental to the rendition of these services. Because selling breast implants was not the physicians' regular
course of business and because the underlying petitions did not allege that the physicians' regular course
of business was the sale of breast implants, the physicians are not "vendors" of breast implants as that term
is used in the vendor's endorsements. Accordingly, we hold as a matter of law the physicians are not
additional insureds under the 1989, 1990, 1991, and 1992 vendor's endorsements.



CONCLUSION



 Having determined that the physicians in the underlying lawsuits do not qualify as additional
insureds under any of Dow Corning's insurance policies, we affirm the trial court's summary judgment.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: April 3, 1997

Publish
1. The insurance carriers for several breast implant physicians (the physician-insurers) brought this
lawsuit. Dr. Stephen Lesauvage and Dr. Ted Huang intervened seeking relief from damages caused by
Zurich's refusal to defend them. For clarity, we will include Drs. Lesauvage and Huang in the description
"physician-insurers."
2. Zurich also had a duty to indemnify those insured under the contracts for any amount the insured
became obligated to pay as damages from such bodily injury; however, the duty to indemnify is not at issue
in this case.
3. In the instant case, the physician-insurers are not arguing that Zurich has a duty to indemnify the
physicians. "[T]he duty to defend and duty to indemnify are distinct and separate duties creating distinct
and separate causes of action." American Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 153
(Tex. App.--Dallas 1990, writ dism'd); see also Heyden Newport Chem. Corp. v. Southern Gen. Ins.
Co., 387 S.W.2d 22, 24-25 (Tex. 1965). 
4. "In contrast, the duty to indemnify is based, not upon the pleadings, but upon the actual facts which
underlie and result in the liability." American Alliance Ins. Co., 788 S.W.2d at 154.
5. Zurich contends that the eight corners rule does not apply. It argues that we may look only to the
language of the insurance contracts to determine whether the physicians are additional insureds. We reject
this co